**Eric S. Fish**
California State Bar No. 280992
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101
619.234.8467

Attorneys for Mr. Irias-Ladines

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Alex Irias-Ladines,<br><br>　　　　Defendant. | Case No. 18-MJ-2080-BGS<br><br>**Memorandum of Points and Authorities in Support of Motion for Bail Redetermination** |

## INTRODUCTION

Mr. Irias-Ladines stands charged in a one-count complaint with a Class B misdemeanor: illegal entry in violation of 8 U.S.C. § 1325. He currently has a time-served offer. Nevertheless, Mr. Irias-Ladines was given a $5,000 personal appearance bond secured by the signature of one financially responsible adult, a bond that he cannot meet.

This bond is inconsistent with the Bail Reform Act. Under the Act, a court must order the defendant released on his own recognizance or on an unsecured appearance bond unless the government can prove he is a danger or a flight risk. 18 U.S.C. § 3142(b). The government, however, can prove neither in this case. Mr. Irias-Ladines is not a danger. He has no criminal history, and he has been charged with a non-violent regulatory offense. Nor is he a flight risk. If released from criminal custody, Irias-Ladines will be transferred to immigration custody, where he will begin the asylum process. He could not flee, then, even if he wanted

to. He therefore literally poses no flight risk. Thus, this Court must order Irias-Ladines released on his own recognizance or at least on an *unsecured* personal-appearance bond. Failing to do that will likely coerce Mr. Irias-Ladines into pleading guilty.

Apart from that, imposing an unaffordable bond on Mr. Irias-Ladines violates the Constitution. The Fifth Circuit, in *O'Donnell v. Harris County, Texas*, 882 F.3d 528, 544–45 (5th Cir. 2018), recently struck down the bail practice of a jurisdiction that effectively denied bail to indigent defendants charged with misdemeanors because it violated the Equal Protection Clause. If this Court effectively orders Mr. Irias-Ladines detained in this misdemeanor case, it too will run afoul of the Equal Protection Clause.

## BACKGROUND[1]

Mr. Irias-Ladines is an 18-year-old man from Honduras. In Honduras, he worked at a car wash and earned a minimal amount of money per month. Because of the rampant violence in the country, he fled Honduras. He eventually joined up with a larger group of people who, like him, were seeking asylum. Mr. Irias-Ladines eventually arrived at a U.S. Port of entry to ask for asylum, but he was not able to turn himself in.

According to the probable-cause statement that the government attached to its complaint, the government apprehended Mr. Irias-Ladines (along with 17 other people) on April 27, 2018 at around 9:05 p.m. near the international border. According to the government, Mr. Irias-Ladines stated that he is a citizen of Honduras. The complaint alleges that Mr. Irias-Ladines violated 8 U.S.C. § 1325.

---

[1] This information was compiled quickly in the limited amount of time available to counsel to interview Mr. Irias-Ladines prior to his bail hearing and in the limited discovery provided to date. It is possible that it contains inadvertent mistakes caused by counsel. Mr. Irias-Ladines, then, reserves the right to rely on altered information later and to take different positions at trial.

Mr. Irias-Ladines has not been convicted of violating § 1325 previously—in fact, he has no criminal history at all. As a result, he stands charged with a Class B misdemeanor, where the statutory-maximum penalty is six months. *See* 8 U.S.C. § 1325(a). Since Mr. Irias-Ladines's apprehension, the government has offered him a time-served deal. Indeed, defendants in this jurisdiction who are convicted of § 1325 who have no criminal or immigration history invariably receive a time-served sentence, regardless of whether they plead or go to trial.

At Mr. Irias-Ladines's initial appearance, the magistrate imposed a $5,000 personal appearance bond secured by the signature of one financially responsible adult. However, Mr. Irias-Ladines cannot meet this bond and he asks that the Court order him released on his own recognizance or at least on an unsecured personal-appearance bond. Failing to do that will likely coerce Mr. Irias-Ladines into pleading guilty.

Once he is released from criminal custody, Mr. Irias-Ladines will enter immigration custody, where he will apply for asylum.

Mr. Irias-Ladines now brings this motion for a bond redetermination.

## ARGUMENT

**I. Under the Bail Reform Act, this Court must release Mr. Irias-Ladines on his own recognizance or at least impose an unsecured appearance bond.**

Mr. Irias-Ladines appears before this Court a presumptively innocent person. "The burdens of pretrial detention are substantial ones to impose on [the] presumptively innocent," *Baker v. McCollan*, 443 U.S. 137, 153 (1979) (Stevens, J., dissenting), and courts must therefore resolve "[d]oubts regarding the propriety of release . . . in favor of defendants," *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Indeed, "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Recognizing the importance of pre-trial liberty, the Bail Reform Act requires district courts to release all defendants before trial—with exceptions not relevant to cases like this one—on "personal recognizance" or "upon execution of an unsecured appearance bond[.]" 18 U.S.C. § 3142(b) (emphasis added). A court can impose any other type of bond only if the court can first find that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id.* In other words, a court must release the defendant on their own recognizance or on an unsecured appearance bond unless the government proves that he is a danger or a flight risk.

As explained below, the government cannot prove that Mr. Irias-Ladines is a danger or a flight risk. The government, then, cannot rebut the presumption that releasing Mr. Irias-Ladines on his own recognizance or with an unsecured personal-appearance bond is warranted. Any other release order—including a cash bond or a personal-appearance bond—will almost certainly result in his continued detention. Such a release order will likely coerce Mr. Irias-Ladines into pleading guilty, as fighting his case will guarantee that he will remain in custody longer.

**A.   The government cannot prove that Mr. Irias-Ladines is a danger.**

Mr. Irias-Ladines is not a danger to the community. *See* 18 U.S.C. § 3142(b). He has not been charged with a serious offense, but only with a Class B misdemeanor. Moreover, the illegal-entry offense charged is only a "*malum prohibitum* regulatory offense," and nothing about the offense suggests that Mr. Irias-Ladines is a danger. *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1190 (9th Cir. 2000). Moreover, Mr. Irias-Ladines has no criminal history. And the fact that the government has offered him a time-served plea deal, for which he will almost certainly receive a time-served sentence if he accepts, underscores that he poses no danger to the community.

4

**B.     The government cannot prove that Mr. Irias-Ladines is a flight risk.**

Mr. Irias-Ladines is also not a flight risk. *See* 18 U.S.C. § 3142(b). Most notably, he is an asylum seeker. Once he is released from criminal custody, he will go into immigration custody, where he will begin the asylum process. Thus, even if Mr. Irias-Ladines wanted to flee once released from criminal custody, he couldn't. Any determination that Mr. Irias-Ladines is a flight risk, then, blinks reality. He literally poses no flight risk. And, of course, because Mr. Irias-Ladines is applying for asylum, he has ever incentive not to flee. If he fled, he would abandon his asylum claim and spoil his chance to lawfully live in the United States. That being said, by allowing him to immediately go into immigration custody, this Court will ensure that Mr. Irias-Ladines can promptly begin the asylum process.

In other cases, the government has contended that the mere fact that someone will enter immigration custody does not mean there is no flight risk. According to the government, individuals like Mr. Irias-Ladines might bond out of immigration custody and then escape. As a legal and practical matter, however, it will be nearly impossible to obtain bond from immigration detention during the time it will take to resolve this case. This Court, then, should ignore the government's speculative assertion. But if this Court has concerns about this scenario, Judge Curiel devised a solution to eliminate any potential risk. In *United States v. Ramirez-Raudales*, 18-MJ-2071, Judge Curiel ordered a defendant charged with § 1325 released on an unsecured bond, recognizing that she posed no flight risk because she was going into immigration custody. To address the concern about her bonding out of immigration custody, Judge Curiel added the following condition: "The defendant shall notify the Court and U.S. Attorney's Office of any request for relief from Immigration custody within 24 hours of such request." *See* Exh. A. Thus, in the incredibly unlikely event that the defendant tried to bond out of immigration custody during the pendency of the criminal cases, the U.S. Attorney's office could ask for a modified release order

5

in the criminal case ahead of time.

Apart from that, it is worth noting that, if convicted, Mr. Irias-Ladines will almost certainly receive a time-served sentence. It would thus make no sense for him to flee. Indeed, this Court has elsewhere recognized that misdemeanants have little incentive to flee. Defendants on the weekly misdemeanor docket in this jurisdiction all receive notices to appear without any sort of financial condition guaranteeing their appearance. The misdemeanor docket includes serious cases charging, for example, driving under the influence, assault on a federal officer, possession of unlawful weapons, and theft.[2] There is no reason why Mr. Irias-Ladines should be viewed as more of a flight risk than those defendants.

Nonetheless, judges in this district either implicitly or explicitly rely on the assumption that undocumented individuals like Mr. Irias-Ladines are unmanageable flight risks. This assumption is legally erroneous and factually unsupportable. It is legally erroneous because the Ninth Circuit has been clear that, while "[a]lienage may be taken into account" when determining flight risk under the Bail Reform Act, "it is not dispositive." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Indeed, "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." *Id.* (citing 18 U.S.C. § 3142(a)(3), (d)). And it likely did so because "[a] categorical bar against release for removable aliens

---

[2] *E.g.*, *United States v. Irungu*, 18-po-962-WVG (charging defendant with driving under the combined influence of alcohol and drugs); *United States v. Perezortiz*, 18-po-67-WVG (charging defendant with being under 21 years of age and driving with a blood alcohol content of over .05); *United States v. Inderrieden*, 18-po-43-WVG (charging defendant with unlawful entry of a military base and assault on the guards who intercepted him); *United States v. Grow*, 18-po-40-WVG (charging defendant with unlawful possession of a "large fixed bade knife" and another "fixed blade F-bar knife."); *United States v. Martinez*, 18-po-176-WVG (charging defendant with unlawful possession of a loaded firearm which was discovered during an anti-terrorism search); *United States v. Strickland*, 18-po-27-WVG (charging defendant with stealing $3,484.60 from the NEX Recreation Committee fund of which Ms. Strickland was the treasurer).

6

would raise constitutional questions." *Id.* at 1090 n.1.

Any assumption that undocumented defendants are unmanageable flight risks is also factually unsupportable. Setting aside for the moment that Mr. Irias-Ladines will be in immigration detention so couldn't flee, there is no empirical evidence indicating that undocumented people not in immigration detention are likely to flee when charged with a crime. *None.* An assumption lacking empirical support should not be enough to detain someone. In fact, the government's own data shows that undocumented people do show up to court. In 2012—the most recent year for which data is available—only 4.86% of immigration detainees absconded in a supervision program similar to what this district uses for pre-trial detainees. *See* Office of Inspector General, U.S. *Immigration and Customs Enforcement's Alternative to Detention (Revised)*, at 6 (Feb. 4, 2015). This data is consistent with the Ninth Circuit's observations in *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (en banc), where the court struck down Arizona's bail system deeming all undocumented people a flight risk:

> There is no evidence that undocumented status correlates closely with unmanageable flight risk. The defendants speculate that undocumented immigrants pose a greater flight risk than lawful residents because they supposedly lack strong ties to the community and have a "home" in another country to which they can flee. But this assumption ignores those undocumented immigrants who do have strong ties to their community or do not have a home abroad.

*Id.* at 786 (internal citations omitted).

In short, the government cannot prove that Mr. Irias-Ladines is a flight risk. And because he is neither a danger nor a flight risk, the Bail Reform Act mandates that he be released on his own recognizance or on an unsecured bond.

**C.   Imposing an unaffordable bond on Mr. Irias-Ladines will likely coerce him into pleading guilty.**

Few people—guilty or innocent—would fight a misdemeanor charge if they could immediately get out of jail by pleading guilty. Indeed, Federal Defenders'

7

experience has been that some clients do in fact plead guilty merely to get out of detention as quickly as possible. More generally, academics have studied the profound problems with detaining people facing little jail time. This research has shown that the "incentives to take" a time-served deal in a misdemeanor case is "overwhelming" and that detaining individuals in these sorts of circumstances causally affects case outcomes. *See Heaton et al.*, The Downstream Consequence of Misdemeanor Pretrial Detention, 69 STAN. L. REV. 711, 716–17 (2017). Put simply, the mere fact that someone is detained affects their willingness to plead guilty and thus individuals charged with misdemeanors who have a time-served offer are much more likely to plead guilty, regardless of the merits of their defense. *See generally id.* at 734–59.

The Department of Justice itself recognizes the unfairness of effectively denying bond to indigent defendants who face little time in jail. For example, in September 2015, DOJ brokered a settlement in Louisiana to end one particular jurisdiction's practice of effectively denying bond to defendants charged with misdemeanors. *See* Settlement Agreement, *Snow v. Lambert*, 15-CV-567 (M.D. La. Sept. 2, 2015). Among other things, the DOJ-brokered settlement requires state authorities to promise that "[a]fter arrest, all misdemeanor arrestees"—with the exception of those charged with misdemeanors involving violence—"will be released on their own recognizance after the completion of standard booking procedures." *Id.* at 2. This is part of the federal government's broader effort to rein in state-court systems that do exactly what the government encourages in this jurisdiction: imposing unaffordable bonds on poor people.

Thus, if this Court imposes a bond that Mr. Irias-Ladines cannot afford—a bond like the one the magistrate imposed—Mr. Irias-Ladines will remain in custody and the bond will have the effect of coercing him into plead guilty.

In short, under the Bail Reform Act, this Court must order Mr. Irias-Ladines released on his own recognizance or impose an unsecured appearance bond.

8

**II.  Effectively ordering Mr. Irias-Ladines detained violates the U.S. Constitution.**

If this Court merely re-imposes the same bond as the magistrate, this Court will in effect be ordering Mr. Irias-Ladines detained, even though he is charged with a misdemeanor. Indeed, "when an accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order." *O'Donnell v. Harris County, Texas*, 882 F.3d 528, 541 (5th Cir. 2018). That will not only violate the Bail Reform Act, it will violate the U.S. Constitution too.

In *O'Donnell*, the Fifth Circuit recently addressed the practice of imposing high bonds on indigent people in misdemeanor cases. *Id.* at 544–45. Relying on empirical data that established that a wealthy defendant who could bond out was less likely to plead guilty and more likely to receive a shorter sentence or be acquitted, the Fifth Circuit held that imposing unaffordable bonds on poor people was inconsistent with the Constitution's promise of equal protection. *Id.* Following that same analysis, the unaffordable bond imposed on Mr. Irias-Ladines in this misdemeanor case violates the Equal Protection Clause.

Thus, even if the Bail Reform Act permitted this Court to impose an unaffordable bond on Mr. Irias-Ladines, the Constitution does not.

**CONCLUSION**

Mr. Irias-Ladines respectfully asks that this Court order him released on his own recognizance or on an unsecured appearance bond.

May 10, 2018                              Respectfully submitted,

*s/ Eric S. Fish*
Eric S. Fish
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Irias-Ladines

9

**CERTIFICATE OF SERVICE**

I, Eric Fish, certify that this briefing has been electronically served on government counsel via the electronic case filing system on May 10, 2018.

*s/ Eric S. Fish]*
Eric S. Fish
Federal Defenders of San Diego, Inc.
